IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, ) | | |
| Plaintiff, ) | | |
| ) | | |
| v. ) | 1:05CV01083 | |
| ) | **ORDER** | |
| TOWN OF CHAPEL HILL, NORTH ) | | |
| CAROLINA ) | | |
| Defendant. ) | | |

This matter is before the court on Defendant's amended motion to compel discovery responses (docket no. 23).[1] Plaintiff has responded in opposition to the motion, and in this posture, the matter is ripe for disposition. For the reasons which follow, the motion will be granted in part and denied in part.

Plaintiff brought this action against Defendant ("Chapel Hill") alleging that Chapel Hill discriminated against Sonya Dixon and her four children, past residents of public housing in Chapel Hill, by refusing requests made by Ms. Dixon for transfer to a wheelchair accessible apartment as a reasonable accommodation for her physically disabled daughter.[2] Plaintiff asserts that Chapel Hill violated the Fair

---

[1] In the original filing of the Motion to Compel on August 11, 2006, counsel for Defendant attached (via electronic filing) the wrong supporting Memorandum of Law. To correct this error and prevent confusion regarding the deadline for a Response, defense counsel filed an Amended Motion to Compel. Accordingly, this Order addresses the Amended Motion to Compel, which is docket no. 23. The earlier Motions to Compel (docket nos. 19 and 22) are supplanted (and therefore mooted) by the Amended Motion to Compel.

[2] The Complaint alleges that Ms. Dixon's daughter, nine years old at the time the Complaint was filed, was diagnosed with cerebral palsy on or about October 3, 1997 (docket no. 1 at ¶ 5).

Housing Act and seeks, among other relief, monetary damages for Ms. Dixon and her four children, who are identified by Plaintiff as "aggrieved persons." In the Complaint, Plaintiff states: "This action is brought by the United States on behalf of Sonya Dixon and [her four children] to enforce the provisions of Title VIII of the Civil Rights Act of 1968." (Docket no. 1 at ¶ 1). Chapel Hill denies all allegations of wrongdoing in this case and further denies that the damages alleged by Plaintiff on behalf of the aggrieved persons resulted from any conduct on Defendant's part.

Defendant served Plaintiff with its First Set of Interrogatories and First Request for Production of Documents on April 5, 2006. In Interrogatory Nos. 13 and 14, Defendant requested Plaintiff identify all treatment rendered to the aggrieved persons as a result of the alleged wrongful conduct of Defendant. In Interrogatory No. 15, Defendant asked Plaintiff to identify any medical bills incurred by each aggrieved person as a result of the events alleged in the Complaint. In Interrogatory 16, Defendant also asked Plaintiff to identify any treatment received by the aggrieved persons five years prior to the alleged wrongful events. In Interrogatory 17, Defendant asks Plaintiff to identify all treatment rendered to any aggrieved persons for "mental, emotional, or substance and/or alcohol problems" at any point in their lives. In its Request for Production No. 1, Defendant asks Plaintiff to produce all medical records regarding treatment rendered to the aggrieved persons as a result of the events alleged in the Complaint. In Request No. 2, Defendant asks Plaintiff to produce all medical records pertaining to medical treatment rendered to

2

any aggrieved person five years before and since the events alleged in the Complaint. In Request No. 6, Defendant asks Plaintiff to produce all medical bills arising out of treatment to any aggrieved person as a result of the events alleged in the complaint.

Defendant argues that Plaintiff's responses to these discovery requests are "vague and incomplete." This court disagrees. In response to Interrogatory No. 13, after objecting on privacy and confidentiality grounds, Plaintiff responds that only Ms. Dixon has received medical treatment for injuries suffered as a result of the events alleged in the Complaint. Plaintiff then states the date and place where Ms. Dixon was treated. In response to Interrogatory No. 14, which requested information regarding continuing medical treatment, Plaintiff referred to its answer to Interrogatory No. 13. In response to Interrogatory No. 15, requesting information regarding medical bills, Plaintiff objected on relevancy grounds, but without waiving the objection, responded that it was not aware of any medical bill incurred by any aggrieved person. In response to Interrogatory No. 16, which requested information regarding medical treatment by any aggrieved person in the five years preceding the events alleged in the Complaint, Plaintiff objected on the grounds that the request was overbroad and not calculated to lead to the discovery of admissible evidence, and that it raised privacy and confidentiality concerns. Again, without waiving its objections, Plaintiff responded by stating that Ms. Dixon's daughter was diagnosed with cerebral palsy in October 1997 and has received extensive medical care for her

3

disability. Plaintiff refers to documents produced in its Initial Disclosures. In response to Interrogatory No. 17, Plaintiff objected on the same grounds as its previous objection to Interrogatory No. 16, particularly noting that the interrogatory did not specify a time period. Plaintiff then stated, without waiving its objections, that "it is unaware of any mental, emotional or substance and/or alcohol problems for which treatment was sought or rendered within the past five years."

This court has reviewed the discovery responses of the Plaintiff and, in general, finds that they are not impermissibly vague or non-responsive. Because Plaintiff is not claiming that Ms. Dixon's four children suffered physical injury or pain as a result of Defendant's actions, Defendant is not entitled to medical records of these persons, with the exception of the daughter who is disabled, as discussed below. Moreover, Plaintiff's responses to the interrogatories make it clear that Plaintiff seeks damages for only emotional distress to the four children, and that these persons received no treatment for their emotional distress.

With regard to Ms. Dixon, Plaintiff has stated that she received emergency medical treatment on one occasion, and Plaintiff asserts that the hospital records for this treatment were included in its Initial Disclosures, constituting six pages of records. This court has no reason to disbelieve this statement, and Plaintiff is required to do no more.

In many of its responses, Plaintiff included language indicating that the responses are based on the information available to the United States. Defendant

4

objects to this qualifying language. The unique procedural posture of this case means that the United States is the plaintiff, and the aggrieved persons are not parties to the action, though they might be considered the real parties in interest. Thus, Plaintiff's responses provided what is required under FED. R. CIV. P. 33(a): "any party may serve upon any other party written interrogatories .... to be answered by the party served or, if the party served is a ... governmental agency, by any officer or agent, who shall furnish such information *as is available to the party*." Plaintiff has done what is required of it. The court notes as well that counsel for Plaintiff represents that it "furnished all information available to it after reviewing over 1800 pages of documents, including HUD's investigative report, and after consulting with Sonya Dixon and others." (Docket no. 27 at 7-8).

Defendant also argues that Plaintiff should be required to produce all medical records for Ms. Dixon's disabled daughter. This court agrees. While the court notes that, according to Plaintiff it provided Defendant with medical records for Ms. Dixon's daughter which show that she was diagnosed with cerebral palsy in October 1997 and is unable to walk (docket no. 27 at 12), it is also noted that Defendant asserts that "the issue of accessibility depends entirely upon the nature of Ms. Dixon's daughter's handicap." While Defendant does not dispute that Ms. Dixon's daughter has cerebral palsy , and Defendant has admitted that the term "disability" includes physical impairments that are attributable to cerebral palsy" (docket no. 5 at ¶ 13), there are other issues with regard to the daughter's disability which Defendant is

5

entitled to explore, including the child's weight and specific mobility issues. Plaintiff has listed two doctors as potential witnesses in this case. Defendant is entitled to access to the records of these medical witnesses.

Finally, Defendant argues that it is entitled to medical records of Sonya Dixon for the period of time following the birth of her daughter in 1997. This court agrees, and will require that Defendant identify and produce records of medical treatment for Sonya Dixon from 1997 through 2005, when this action was filed. These records are to include any records available to Plaintiff concerning Ms. Dixon's postpartum depression and alcohol issues as raised in depositions in this case.

On September 20, 2006, this court entered a Protective Order submitted by Plaintiff addressing the privacy and confidentiality concerns of the parties regarding release of medical records and other information in this case. All discovery material produced in accordance with this order is subject to the provisions of the Protective Order.

In accordance with the foregoing, the motion to compel (docket no. 23) is **DENIED IN PART AND GRANTED IN PART**.[3]

_____
Wallace W. Dixon
United States Magistrate Judge

Durham, NC
September 22, 2006

---

[3] The court notes that, combined with its response to the amended motion to compel, Plaintiff has included a motion to strike. Since the court has addressed the motion to compel on the merits, to the extent that the motion to strike requires any action by the court, it is DENIED.

6